UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NADINE E. LIMA,        ) | |
|     Plaintiff        ) | |
|                  ) | |
|     v.        ) | C.A. No. 17-cv-156-MSM-PAS |
|                  ) | |
| CITY OF EAST PROVIDENCE, by and        ) | |
| through its Finance Director, MALCOLM  ) | |
| MOORE, and CITY OF EAST        ) | |
| PROVIDENCE SCHOOL DEPARTMENT,   ) | |
| by and through its Superintendent,        ) | |
| individually and in her official capacity, ) | |
| KATHRYN CROWLEY,        ) | |
|     Defendants        ) | |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This matter is before the Court on the Objection of Nadine E. Lima to the Report and Recommendation of Magistrate Judge Patricia A. Sullivan (ECF No. 28). The Magistrate Judge, pursuant to Fed. R. Civ. P. 72(b), has recommended that Count I of the Complaint (ECF No. 1-1) be dismissed and the defendants' motion for summary judgment (ECF No. 13) be granted.[1]

Although Ms. Lima's Objection to the Report is so general and devoid of reasoning as to be unhelpful, it minimally meets the criteria of LR Cv. 72(d).[2] In any

---

[1] An original Count III, claiming race discrimination, was dismissed by Stipulation (ECF No. 12).

[2] Fed. R. Civ. P. 72(b)(2) requires that an objector file "specific written objections to the proposed findings and recommendations." The Local Rule further mandates that

1

event, the Court has undertaken, as is its responsibility under Fed. R. Civ. P. 72(b)(3), a *de novo* review. I have read and considered the memoranda of the parties, the Statements of Disputed and Undisputed Facts, and the exhibits, as well as thoroughly assessed the Report & Recommendation. After doing so, and in the exercise of my independent judgment, I concur in the conclusion that Count I should be dismissed[3] and that the defendants are entitled to summary judgment on the remaining claims.

---

the objection "shall specify the findings and/or recommendations to which objection is made and the basis for the objection." Ms. Lima's objection (ECF No. 30), in its entirety, reads as follows:

> As grounds therefore, Plaintiff states that the Magistrate made numerous decisions on issues of fact and did not construe evidence of retaliation against the Plaintiff for her protected conduct in the light most favorable to the Plaintiff. In addition, the magistrate construes evidence of a hostile environment against the Plaintiff under an unduly restrictive standard making Plaintiff's burden of proof to get a trial much higher than what is required. It also fails to read the evidence in the light that it itself proves that the reasons asserted by the Defendants for the conduct against her are a mere pretext.

There was no memorandum filed in support of the Objection and thus no "fleshing-out" of Ms. Lima's complaints about the Report. The above paragraph was the sum total of what Ms. Lima contends. She fails to mention any specific instances of alleged factfinding which contravened the summary judgment requirement to assume all reasonable facts and inferences in her favor. She also fails to identify what "unduly restrictive standard" she believes the Magistrate Judge applied. The final sentence of her objection is rather unclear, and the Court is quite unable to figure it out. I have assumed she is again complaining that all reasonable facts and inferences were not drawn in her favor on the issue of pretext.

[3] Even reading Ms. Lima's inartful objection to the report generously, there is no indication that she objects to the recommendation of dismissal of Count I for breach of contract. She mentions only retaliation, hostile work environment, and pretext. None of these are relevant to the breach of contract claim.

Separate from the breach of contract claim of Count I, *but see n. 3, infra,* Ms. Lima's claims invoke 42 U.S.C. § 1981 (Civil Rights Act of 1866), 29 U.S.C. § 2615(a)(2) (Family Medical Leave Act), and the Rhode Island Civil Rights Act, R.I.G.L. § 42-112-1, *et seq,* all of which protect her from discrimination and retaliation for the exercise of protected rights.[4] The dispute arose from Ms. Lima's employment as a school principal in East Providence, at the Whiteknact Elementary School and subsequently as the principal of a newly-founded pre-K program, established with the help of a special grant obtained from the Rhode Island Department of Education.[5] Ms. Lima contends that her involuntary transfer to the pre-K program was a "demotion," undertaken in retaliation for her previous exercise of rights in suing East Providence some years before, for her obtaining a settlement in that action, and for her having taken family medical leave. She alleges a series of other retaliatory

---

[4] As noted in the Magistrate Judge's Report, all use the same framework of analysis. (ECF No. 28, at 14, n.7.)

[5] One of Ms. Lima's complaints is that the school department(?) used her credentials to bolster its application for state funding for this special, pre-K program, and did so without telling her. East Providence does not dispute this fact. I fail to see, however, how that would constitute either a discriminatory or retaliatory action against Me. Lima. If East Providence had already decided that someone with Ms. Lima's qualifications would make the best principal for the new program, it would make sense to include her credentials as a selling point in the application. Even if that decision had not yet been made, it has not been demonstrated that this was an unusual practice, or an unjustified one, or in any way an unlawful thing to do. East Providence clearly had an interest in putting its 'best foot forward" to secure special funding and its belief that Ms. Lima's participation would be a selling point hardly points to racial animus or a retaliatory motive. It would have been a courtesy to tell her, but their failure to tell her does not turn an insignificant event into a significant one. Not surprisingly, the Report and Recommendation notes that Ms. Lima conceded in oral argument before the Magistrate Judge that use of an employee's credentials, without consent, in such an application "is not a violation of any established norm." (ECF No. 28, at 18, n.10.)

actions pre-dating the transfer and, ultimately, the creation of a hostile work environment that, she maintains, caused her constructive termination when she resigned her position on August 2, 2016.

The Report and Recommendation contains a thorough recitation of the factual background, analysis of the relevant law, and application of the governing law. (ECF No. 28, pp. 3-11.) The Court need not restate either the factual background or governing law in detail. The Court has read the filings carefully, considered the Statements of Disputed and Undisputed Facts (ECF Nos. 14, 21, 22, 24), and the Exhibits, and applied the burden-shifting paradigm of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Ms. Lima falters at the first step of her first burden in that analysis: establishing a *prima facie* case of discrimination or retaliation. The evidence that she offers hardly supports a finding of adverse employment action that "impair[ed] or potentially impair[ed] the plaintiff's employment in some cognizable manner." *Nelson v. Univ. of Me. Sys.*, 923 F. Supp. 274, 281 (D.Me. 1996). Even if one assumes *arguendo* that her re-assignment was adverse,[6] she has not shown any connection to her status in a protected class by virtue of her race.[7] Nor did she produce any evidence that the transfer was motivated by a

---

[6] "[R]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885 (6th Cir. 1996).

[7] Ms. Lima alleged that a higher percentage of special education students were placed at her school as retaliation. But as the Report and Recommendation noted, she failed to prove any relationship between the number of special needs students and her transfer. (ECF NO. 28 at 7.) Ms. Lima's other examples, such as the failure to provide her with a rug and wall divider, are nearly inconsequential. Even if not, the defendants came forward with the non-pretextual reason that dividers are considered

4

desire to retaliate against her for either previously suing the department or for taking family leave. However, even were I willing to travel along with her through this first phase, as Ms. Lima is certainly a member of a protected class and both her medical leave and her previous lawsuit constitute protected activity, her claims fail in the end.

The defendants have, without a doubt, shouldered step two and carried their burden of showing a legitimate, non-discriminatory reason for the reassignment.[8] The pre-K program was specially funded by the state and the department had an incentive in making sure it was successful. Ms. Lima was an experienced elementary school principal who also held pre-K certification as a principal. There was no salary reduction. Ms. Lima puts forth the bare assertion that being the principal of a pre-K

---

unfriendly to best educational practices. (ECF NO. 23-1 at 2). The rug was not actually refused. *Id.* An additional claim of retaliation is that the role of Affirmative Action and Civil Rights Officer was given to an existing employee – Dr. Celeste Bowler, an assistant superintendent – instead of hiring a new, dedicated employee. Ms. Lima alleges that this hiring contravened the spirit if not the letter of a settlement reached after she sued the department in 2014. The hiring did not clearly breach the agreement and there is no evidence supporting the claim that the department's decision to give the job responsibilities to an existing, high-level employee was retaliatory. Ms. Lima also complains that her recommendation to remove a substitute teacher from her position was not followed; but the substitute teacher was taken out of Ms. Lima's school, so I fail to understand how this was an adverse action, much less retaliatory.

[8] Without belaboring the point, I also find that East Providence came forward with legitimate reasons for all the actions Ms. Lima claims were retaliatory or discriminatory: *e.g.,* the divider, the rug, the naming of Dr. Bowler as Affirmative Action Officer, the transfer of the substitute teacher. She relies on these same occurrences to show that her work environment became hostile. I find that they fall woefully short of showing the "severe or pervasive" harassment required for creation of a hostile workplace to constitute a retaliatory act. *Noviello v. City of Boston,* 398 F.3d 76, 89 (1st Cir. 2005).

program is less prestigious and the transfer would adversely affect her prospects for future employment in Florida. She submits nothing, however, that demonstrates either that this perception is a reasonable one or that her future efforts in Florida were in fact unsuccessful because of it.

The third step in the *McDonnell Douglas* analysis is again one on which Ms. Lima's evidence falls short. She may not agree that she was the best person to become the principal of the newly funded pre-K program, but she has failed to show that the defendants' proffered reason was pretextual. Nothing in what she submits would lead to the conclusion that the reason put forth by East Providence was a sham intended to cover up the real motive of discrimination. *See Robinson v. Town of Marshfield,* 950 F.3d 21, 25 (1st Cir. 2020). Nor has she shown that the defendants' reasons for the other actions she complains about were pretextual. The same shortcomings in her evidence doom both her discrimination and retaliation claims.[9] Ms. Lima "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000).

---

[9] In addition, although Ms. Lima has not indicated any objection to the Magistrate Judge's Report and Recommendation with respect to her claim under Rhode Island's Whistleblower Act, R.I.G.L. §28-50-1, that claim, as noted by the Magistrate Judge "rises or falls based on the same tripartite decisional sequence laid out in *McDonnell Douglas* and its progeny, *Barboza v. Town of Tiverton*, C.A. No. 07-339-ML, 20210 WL 2231995, at *9 (D.R.I June 2, 2010). Report & Recommendation (ECF NO. 28, at n. 6). In addition to having been abandoned by Ms. Lima, it fails for the same reason as the others. *Id.*

In conclusion, I concur entirely with the analysis of the Report & Recommendation and accept it in its entirety. I therefore ORDER that Count I be DISMISSED and that the defendants' motion for summary judgment with respect to the remaining counts be GRANTED.

IT IS SO ORDERED:

_____
Mary S. McElroy,
United States District Judge

June 12, 2020